```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF INDIANA
                   SOUTH BEND DIVISION

DENNIS PETERSON,                  )
                                  )
Plaintiff,                        )
                                  )
    vs.                           )      NO. 3:07-CV-397
                                  )
MIAMI CORRECTIONAL FACILITY,      )
et al.,                           )
                                  )
Defendants.                       )
```

## OPINION AND ORDER

This matter is before the court *sua sponte* pursuant to 28 U.S.C. section 1915A. For the reasons set forth below, the court **DISMISSES**, pursuant to section 1915A, all claims set forth in Plaintiff's amended complaint except his Eighth Amendment claim that Defendants John VanNatta, Lawrence Simpson, and Adam Duncan failed to protect him from being attacked and injured by another inmate.

BACKGROUND

Dennis Peterson, a prisoner confined at the Pendleton Correctional Facility, filed a complaint in the Miami Superior Court, alleging that Miami Correctional Facility officials violated his federally protected rights and rights protected by the Indiana Constitution. The Defendants removed the complaint to this court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. The court granted Plaintiff leave to file an amended complaint, and the case is

before the court on Plaintiff's amended complaint. The defendants named in the amended complaint are the Miami Correctional Facility, John VanNatta, Lawrence Simpson, Adam Duncan, Correctional Officers Traxler and Martin, and A. Robertson,

DISCUSSION

Pursuant to 28 U.S.C. § 1915A(a), the court shall review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." Because Peterson is a prisoner as defined in Section 1915A(c) and the defendants he seeks redress from are governmental officials, § 1915A requires the court to screen this complaint, even though he originally filed it in state court.

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint that does not state a claim upon which relief can be granted. The court applies the same standard under § 1915A as when addressing a motion under Rule 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006).

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

2

*Bell Atl. Corp. v. Twombly*, ___ U.S. ___, ___; 127 S.Ct. 1955, 1964-65 (2007) (quotation marks, ellipsis, citations and footnote omitted).

> While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant set out in detail the facts upon which he bases his claim, Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

*Id.* at n.3(quotation marks and citation omitted). Furthermore, "on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*, 127 S.Ct. at 1965, *citing Papasan v. Allain*, 478 U.S. 265, 286 (1986) (quotation marks omitted).

Peterson alleges in his amended complaint that the defendants' actions violated rights protected by the United States Constitution's Fourteenth Amendment's due process clause, the Eighth Amendment's prohibition against cruel and unusual punishments, and provisions of Indiana's Constitution. (Amended Complaint at p. 3). Peterson brings this action under 42 U.S.C. section 1983, which provides a cause of action to redress the violation of federally secured rights by a person acting under color of state law. *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984). To state a claim under section 1983, a plaintiff must allege violation of rights secured by the Constitution and laws of

the United States, and must show that a person acting under color of state law committed the alleged deprivation. *West v. Atkins*, 487 U.S. 42 (1988). The first inquiry in every section 1983 case is whether the plaintiff has been deprived of a right secured by the Constitution or laws of the United States. *Baker v. McCollan*, 443 U.S. 137, 140 (1979).

ELEVENTH AMENDMENT

Peterson names the Miami Correctional Facility as a defendant. The Constitution's Eleventh Amendment provides: "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Eleventh Amendment bars "a suit by a citizen against the citizens own State in Federal Court." *Johns v. Stewart*, 57 F.3d 1544, 1552 (7th Cir. 1995). The Eleventh Amendment's jurisdictional bar extends to state agencies, such as the Miami Correctional Facility as well as to the State itself. *Kashani v. Purdue University*, 813 F.2d. 843 (7th Cir. 1987). A State may elect to waive its Eleventh Amendment immunity, but Indiana has not done so. *Meadows v. State of Indiana*, 854 F.2d 1068, 1069 (7th Cir. 1988).

Peterson also seeks to sue the defendant state officials for damages in both their official and individual capacities. He may

4

sue these defendants for damages in their individual capacities, but the Eleventh Amendment precludes an action against them for damages in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985); *Meadows v. State of Indiana*, 854 F.2d at 1069. Moreover, state officials, in their official capacities, are not "persons" within the meaning of section 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).

CONDITIONS OF CONFINEMENT, JUNE 14-15, 2005

In rhetorical paragraph two of his amended complaint, Peterson alleges that on June 14, 2005, several Defendants punished him and attempted to "control his behavior" without any disciplinary hearing prior to the punishment." (Amended Complaint at p.4). Peterson asserts that the officers temporarily turned off the water to his cell and left him in a cell "on a strip-cell status without a required disciplinary body sanctioning the punishment . . .." (Amended Complaint at p. 4). According to paragraph four, the next morning Sergeant Vajda, "after speaking with plaintiff to ensure plaintiff would demonstrate 'good' behavior turned plaintiff's cell location water and toilet back on and returned all of plaintiff's personal property that was confiscated" the preceding day. (Amended Complaint at p. 5).

Peterson alleges that the Defendants' actions denied him due process of law. The Fourteenth Amendment's due process clause,

5

however, does not protect against every change in the conditions of confinement having a substantial adverse impact on a prisoner. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). A convicted prisoner is entitled to due process only when the conditions imposed work an atypical and significant hardship on him in relation to the ordinary incidents of prison life or where the discipline imposed infringed on rights protected by the due process clause of its own force. Even transferring a prisoner from the general population to a segregation unit does "not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest," and is "within the expected parameters of the sentence imposed by a court of law." *Sandin v. Conner*, 515 U.S. at 485. The due process clause does not require that Peterson have received a hearing before Defendants temporarily turned off the water to his cell and removed items of his property overnight in an attempt to persuade him not to misbehave.

Peterson also alleges that Defendants' actions violated the Eighth Amendment's cruel and unusual punishments clause. The Constitution, however, does not mandate comfortable prisons, and "only those deprivations denying "'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), *quoting Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). A violation of the Eighth Amendment's cruel and unusual punishments

6

clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294 (1991).

If prison officials imposed the conditions Peterson describes in his amended complaint for a long period of time, it might support an Eighth Amendment claim. But conditions that would violate the Eighth Amendment over a long period of time may not constitute a constitutional violation if imposed for short periods of time. *See Jones-Bey v. Wright*, 944 F.Supp. 723, 732 (N.D. Ind. 1996). Peterson alleges no actual harm from this incident, and confinement in a cell overnight under the conditions asserted in the amended complaint states no Eighth Amendment claim.

TEMPORARY DEPRIVATION OF PROPERTY ON JUNE 14-15, 2005

Peterson alleges that Defendants failed "to provide plaintiff a post-deprivation hearing after confiscating plaintiff's personal property . . . till such time [as] plaintiff earned the property back with good behavior." (Amended Complaint at p. 4). The complaint makes it clear that prison officials withheld Peterson's property from him for only a few hours and he got it all back the

7

next morning. But even if Defendants had deprived him permanently of property without a hearing, it would not state a federal claim upon which relief can be granted.

The Fourteenth Amendment's due process clause provides that the states shall not "deprive any person of life, liberty, or property, without due process of law." But there is no loss of property without due process of law if a state provides an adequate postdeprivation remedy for the loss. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Hudson v. Palmer*, 468 U.S. 517 (1984). The Indiana tort claims act, Ind. Code section 34-13-3, provides a sufficient remedy for loss of personal property. *Hossman v. Spradlin*, 812 F.2d 1019, 1023 (7th Cir. 1987); *Wilson v. Civil Township of Clayton*, 839 F.2d 375 (7th Cir. 1988). Since Indiana provides an adequate remedy for the illegal deprivation of property by prison officials, even if he had alleged an actual loss of property, Peterson would not state a claim upon which relief can be granted under section 1983.

DISCIPLINARY ACTION AGAINST THE PLAINTIFF

In paragraph nine of his amended complaint, Peterson alleges that on June 14, 2005, Defendant Trexler violated his federally protected rights by filing a "'false' disciplinary report of conduct offense for disorderly conduct." (Amended Complaint at p. 6). In paragraph ten of his amended complaint, he alleges that Defendant A. Robertson denied him due process at a disciplinary

8

hearing, subjected him to the loss of thirty days of earned credit time, and had him placed in a segregated housing unit for thirty days.

Peterson brings this action under 42 U.S.C. section 1983, which provides a cause of action to redress the violation of federally secured rights by a person acting under color of state law. *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984). "Habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of  § 1983." *Heck v. Humphrey*, 512 U.S. 477, 481 (1994), citing *Preiser v. Rodriguez*, 411 U.S. 475, 488-490 (1973). Because the loss of good time credits increases the length of a prisoner's confinement, habeas corpus is the appropriate remedy for a prisoner who has been deprived of good time credits or demoted in good time credit earning classification. *Harris v. Duckworth*, 909 F.2d 1057, 1058 (7th Cir. 1990).

Peterson seeks damages rather than restoration of earned credit time. But his damage claim is barred at this point by *Heck v. Humphrey*, 512 U.S. at 486-87, which provides that if the remedy sought under section 1983 would require a finding or judgment that would have the effect of invalidating a conviction or sentence, the plaintiff must first "prove that the conviction was reversed on direct appeal, expunged by executive order, declared invalid by a

9

state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." The *Heck* doctrine applies to prison disciplinary hearings where the plaintiff lost good time credits or was demoted in credit time earning classification. *Edwards v. Balisok*, 520 U.S. 641 (1997).

To award damages to Peterson because he was the victim of a false conduct report and/or was subjected to a hearing at which he was denied due process would require a finding that the conduct report was false and/or that the disciplinary board's finding of guilt was invalid. Because the relief that Peterson requests would render the board's finding of guilt invalid, his section 1983 complaint is premature.  Accordingly, this Court will dismiss this claim without prejudice to Plaintiff's right to file a petition for writ of habeas corpus challenging the loss of earned credit time and his right to refile his damage claim if he is able to have the disciplinary board's finding of guilt set aside.

ASSIGNMENT OF THE PLAINTIFF TO A POST-SEGREGATION HOUSING UNIT

In paragraph five of his amended complaint, Peterson alleges that on June 30, 2005, after he completed his segregation time imposed on him by Defendant Robertson, the Defendants violated his federally protected rights by "placing plaintiff in a ([post-) segregation housing unit, without a classification hearing nor a

10

required disciplinary hearing." (Amended Complaint at p. 5). Peterson alleges that he remained in this housing unit for thirty days.

Even if the Defendants assigned Peterson to a post-segregation unit without a hearing, it states no federal claim upon which relief can be granted because there is no liberty interest implicated by the inter-institutional or intra-institutional transfer of an inmate. *Meachum v. Fano*, 427 U.S. 215, 225-226 (1976); *Montayne v. Haymes*, 427 U.S. 236 (1976); *Mauricio v. Bronnenberg*, 688 F. Supp. 1206 (N.D. Ind. 1986). Even transferring a prisoner from the general population to a segregation unit does "not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest," and is "within the expected parameters of the sentence imposed by a court of law." *Sandin v. Conner*, 515 U.S. at 485. Peterson's allegation that he was transferred from a segregation unit to a post-segregation unit before being returned to general population states no claim upon which relief can be granted.

INDIFFERENCE TO PLAINTIFF'S SAFETY

In paragraph nine of his amended complaint, Peterson states that three of the Defendants, John VanNatta, Lawrence Simpson, and Adam Duncan allowed

> a known violent offender to be placed in the cell with Plaintiff Peterson, and after being told of a possible violent encounter between Plaintiff Peterson and that offender . . . [these Defendants were] . . . negligent in

11

>    the care and safety of Plaintiff Peterson, which resulted
>    in Plaintiff Peterson being physically assaulted by that
>    violent offender, [causing] pain and mental and emotional
>    anguish.

(Amended Complaint at p. 9).

Peterson alleges that defendants VanNatta, Simpson, and Duncan were deliberately indifferent to his safety and security in violation of the Eighth Amendment. A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. *Farmer v. Brennan*, 511 U.S. at 834. Because deliberate indifference is comparable to criminal recklessness, *Farmer v. Brennan*, 511 U.S. at 837, a plaintiff must demonstrate more than inadvertence or negligence. *Billman v. Indiana Department of Correction*, 56 F.3d 785 (7th Cir. 1995). He must show "something approaching a total unconcern for [his] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992), *citing McGill v. Duckworth*, 944 F.2d 344 (7th Cir. 1991). The Defendant must have known of and disregarded an "excessive risk" to the inmate's health or safety. *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994), *quoting Farmer v. Brennan*, 511 U.S. at 837-838.

12

"Fed. R. Civ. P. 8 establishes a system of notice pleading," and a complaint may not be dismissed at the pleadings stage "unless no relief could be granted 'under any set of facts that could be proved consistent with the allegations.'" *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998), quoting *Hishon v. King & Spalding*, 467 U.S. at 73. Giving Peterson the benefit of the inferences to which he is entitled at the pleadings stage, this Court cannot say that he can prove no set of facts consistent with his Eighth Amendment claim that Defendants VanNatta, Simpson, and Duncan were deliberately indifferent to his safety.

STATE LAW CLAIMS

In addition to his Federal law claims, Peterson alleges that the Defendants' actions violated Indiana's constitution. Pursuant to 28 U.S.C. § 1367, unless provided otherwise by statute, federal courts "have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy." When a district court dismisses federal claims, it has broad discretion to refuse to exercise jurisdiction over supplemental state claims. *Szumny v. American General Finance Inc.*, 246 F.3d 1065, 1073 (7th Cir. 2001); *Kennedy v. Schoenberg, Fisher & Newman Ltd.*, 140 F.3d 716, 727 (7th Cir. 1998). This Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims that are factually similar to the

federal claims being dismissing from this action. The dismissal of these claims will be without prejudice to any right Peterson might have to refile his state law claims in state court.

Peterson also presents a supplemental state law claims related to his federal failure to protect claim, which remains before this court. He alleges that the Defendants' actions violated rights protected by Article I section 16 of Indiana's Constitution, which prohibits excessive bail and cruel and unusual punishments. A district court may, however, decline to exercise supplemental jurisdiction if "the claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1).

Under the federal system, federal courts do not interpret state constitutions, though they may apply settled interpretations of a state constitution established by state courts. Peterson is asserting that failure to protect him from being attacked by another inmate violates Article I section 16 of Indiana's constitution, on which there is apparently no state created precedent. "Retaining this claim may require the Court to embark on an interpretation of Indiana's Constitution virtually unguided by state court precedent. As a matter of comity, whether the acts in question violate Indiana's Constitution are best left to the province of Indiana's state court judges." *Linnemeier v. Indiana University – Purdue University Fort Wayne*, 155 F.Supp. 2d 1044, 1056 (N.D. Ind. 2001). Pursuant to 28 U.S.C. section 1367(c)(1),

14

this court will decline to exercise supplemental jurisdiction over Peterson's Indiana constitutional claim relating to failure to protect him from being attacked by another inmate, and will dismiss that claim without prejudice to his right to bring it in state court.

CONCLUSION

For the foregoing reasons, this Court:

(1) **GRANTS** the plaintiff leave to proceed against Defendants John VanNatta, Lawrence Simpson, and Adam Duncan in their personal capacities for damages on the Eighth Amendment claim set forth in rhetorical paragraph nine of his amended complaint that they were deliberately indifferent to his safety by allowing another inmate to attack him;

(2) **DISMISSES**, pursuant to 28 U.S.C. section 1915A(b)(1), all other federal claims and **DISMISSES** defendants Miami Correctional Facility, and Correctional Officers Traxler and Martin, and A. Robertson;

(3) **DISMISSES** all state law claims and the claims presented in paragraphs nine and ten of the amended complaint without prejudice; and

(5) Pursuant to 42 U.S.C. section 1997e(g)(2), **ORDERS** that Defendants VanNatta, Simpson, and Duncan are to respond to the amended complaint as provided for in the Federal Rules of Civil

Procedure.

**DATED: April 18, 2008**              **S/RUDY LOZANO, Judge**
                                       **United States District Court**