# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | | |
|---|---|---|
| DENNIS PETERSON,<br><br>Plaintiff,<br><br>vs.<br><br>MIAMI CORRECTIONAL FACILITY, *et al.*,<br><br>Defendants. | ) | CAUSE NO. 3:07-CV-397 |

## OPINION AND ORDER

This matter is before the court on the Defendants' Motion for Summary Judgement asserting that plaintiff Dennis Peterson has not exhausted his administrative remedies as required by 42 U.S.C. § 1997e(a). For the reasons set forth below, the court **GRANTS** the Defendants' Motion for Summary Judgment.

### BACKGROUND

Dennis Peterson, a prisoner currently confined at the Pendleton Correctional Facility, filed a complaint in the Miami Superior Court, alleging that Miami Correctional Facility ("MCF") officials violated his federally protected rights and rights protected by the Indiana Constitution. The defendants removed the complaint to this court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. The court granted the plaintiff leave to file an amended complaint, which raised the same issues as the original complaint, and added a brief claim that the defendants:

> caused or otherwise allowed a known violent offender to be placed in the cell with Plaintiff, and after being told of a possible violent encounter between plaintiff Peterson and that offender . . . [the defendants were] . . . negligent in the care and safety of Plaintiff Peterson, which resulted in Plaintiff Peterson being physically assaulted by that violent offender, pain, and mental and emotional anguish.

(DE #16 at p. 6).

In its screening order, pursuant to 28 U.S.C. § 1915A, the court dismissed all of the plaintiff's claims except his failure to protect claim against defendants John VanNatta, Lawrence Simpson, and Adam Duncan.

DISCUSSION

Pursuant to 42 U.S.C. § 1997e(a), prisoners must utilize any available prison grievance procedure before they may file a § 1983 claim regarding conditions of confinement. *Booth v. Churner*, 532 U.S. 731 (2001); *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 537 (7th Cir. 1999). Section 1997e "applies to 'all inmate suits, whether they involve general conditions or particular episodes, and whether they allege excessive force or some other wrong.'" *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002), quoting *Porter v. Nussle*, 534 U.S. 516, 122 (2002). "Prison officials may not take unfair advantage of the exhaustion requirement, however, and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative

misconduct to prevent a prisoner from exhausting.” *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

Although not depriving the courts of subject-matter jurisdiction, the comprehensive administrative exhaustion requirement requires dismissal of any case in which an available administrative remedy has not been exhausted. *Massey v. Wheeler*, 221 F.3d 1030 (7th Cir. 2000). “For a prisoner to exhaust his remedies within the meaning of § 1997e(a), he must ‘file complaints and appeals in the place, and at the time, the prison’s administrative rules require.”’ *Burrell v. Powers,* 431 F.3d. 282, 285 (7th Cir. 2005), quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Exhaustion of administrative remedies is a condition precedent to suit in federal court. *Perez*, 182 F.3d at 335.

Where exhaustion has been raised as a defense, issues relating to exhaustion are to be resolved by the court before allowing the case to proceed to a trial on the merits. *Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008). The sequence to be followed in a case in which exhaustion is contested is as follows:

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) if the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must

> be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits . . ..

*Id.* at 742.

Thus, the court must examine the parties' submissions concerning exhaustion of administrative remedies. If the court cannot resolve the question of exhaustion based on the affidavits and documentary evidence, it must conduct a hearing to resolve any disputed issues of material fact.

In support of their summary judgment motion, the defendants submitted the declaration of MCF Supervisor of Classification Amy Clark. This declaration establishes that the Indiana Department of Correction had a grievance procedure in effect when the events Peterson complains of occurred, that the claims he presents in his complaint were grievable, and that MCF records do not contain a grievance filed between June 14 and November 1, 2005, dealing with the alleged failure of MCF officials to prevent an attack by Hauley, Peterson's cellmate, on Peterson. (DE #31-3).

Because the defendants meet their initial obligation under Fed. R. Civ. P. 56, the burden shifts to Peterson to come forth with evidence sufficient, if viewed as fully in his favor as reasonable, would allow a factfinder to decide in his favor the

question of whether he grieved or attempted to grieve the claims he presents in his complaint. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Peterson filed a response to the defendants' summary judgment motion, entitled motion to proceed and to deny defendant's motion for summary judgment, along with his own affidavit and documentary evidence.

In his affidavit, the petitioner states that "in May and June of 2005 [he] did submit several grievances to casework manager Moore and counselor Tobin" but that "they refused to process, rejected, and or otherwise destroyed concerning the issue of violence between myself and cellie, offender Hauley and Aministrational staff (officers) refusal to investigate and remedy" his problems. (DE #32-2, p. 1).

Peterson also states that in May 2005 he wrote several letters to the superintendent, informing him that he and his cellmate were not getting along, and that after June 14, 2005, he wrote to internal affairs and filed a notice of tort claim presenting his claims. (DE #32-2, p. 2). Finally, Peterson states that on June 1, 2008, he filed a grievance asserting that Hauley attacked him on June 14, 2005, but that it was denied as untimely. (DE #32-2, p. 2).

The defendants responded to the plaintiff's submissions with three additional declarations. The problems Peterson asserts in his amended complaint occurred on June 14 and 15, 2005, in D Housing

Unit. Counselor Barbara Gibbs states in her declaration that, according to the facility records, Peterson was moved from D Housing Unit to N Housing Unit on June 15, 2005, where he remained until July 6, 2005, and that on July 6, 2005, he was moved P Unit, where he remained until August 2, 2005. (DE #36-2). Gibbs states that she was the N Housing Unit Counselor and that she was available to assist Peterson in obtaining and filing a grievance, but that he never spoke to her or asked for a grievance form. She also states that there was a locked box on the unit where prisoners could deposit grievances. Finally, she declares that neither Moore nor Tobin "had any responsibility with respect to N Housing Unit during the time in June and July 2005 that Mr. Peterson was housed there." (DE #36-1 at p. 2).

Wayne Ilderton states in his declaration that he was the counselor assigned to P Housing Unit and was available to assist Peterson in obtaining and filing grievance forms, but that Peterson never spoke to him. (DE #36-3). He also states that there was a locked box on the unit where prisoners could deposit grievances. Finally, he states that neither Moore nor Tobin had any responsibility with respect to P Housing Unit while Peterson was housed there.

Clair Retek states in her declaration that Peterson filed a belated grievance in 2008, which was defective in a number of respects. (DE #36-4). She states that on June 5, 2008, she returned

the grievance to Peterson along with a form detailing the deficiencies. According to Retek:

> 5. One of Mr. Peterson's errors was his failure to explain why he had not grieved within the time period set by departmental rule.
>
> 6. With respect to timing, the form stated, in part: "The grievance was not submitted within the correct time frame. Unless you can show just reason(s) for this delay, this grievance/appeal will not be reviewed."
>
> 7. The State Form 45475 also notified Mr. Peterson, at the bottom, that he could still proceed with his grievance if he wished to do so by correcting his errors and returning the grievance within five working days.
>
> 8. To my knowledge, Mr. Peterson did not attempt to explain why he had delayed so long to grieve an incident that had occurred in 2005, and so I never had the opportunity to decide whether to waive the applicable time limits for grieving.

(DE #36-4 at pp 1-2).

Peterson responded with a second affidavit in which he states that he repeatedly attempted to grieve his problems with Hauley. (DE #37-2). He states that he "requested grievance form of Casework Manager Moore, Counselor Tobin, and Counselor Wayne Ilderton when I was moved to N-Housing Unit." (DE #37-2 at p. 5).

Peterson asserts that summary judgment pursuant to § 1997e(a) is not appropriate for several reasons. He argues that he attempted to submit grievances to Tobin and Moore in May and June 2005 about problems with his cellmate. But any complaint that he may have made to Tobin and Moore before June 14, 2005, or any grievance he may have attempted to file before that date, do not assist the plaintiff in avoiding summary judgment because the incidents he complains of in his complaint occurred on June 14, 2005.

Accordingly, anything he may have attempted to file before that date would not have addressed the claim that he was injured on June 14, 2005.

Peterson also states in his formal grievance of June 1, 2008, that he "presented an informal grievance to counselor Tobin and CHM Moore on June 15, 2005, which was not responded to." (DE #32-3 at p. 16). This meets the requirement of having occurred after the events of June 14, 2005, but the informal grievance was not a formal grievance — and only formal grievances lead to exhaustion of administrative remedies. "For a prisoner to exhaust his remedies within the meaning of § 1997e(a), he must 'file complaints and appeals in the place, and at the time, the prison's administrative rules require.'" *Burrell,* 431 F.3d. at 285. The defendants' submissions establish that on June 14, 2005, Peterson was moved to N Housing Unit, where he remained until July 6, 2005. Neither Tobin nor Moore had any responsibility for N Housing Unit.

Finally, on June 1, 2008, Peterson submitted a formal grievance asserting that prison officials failed to prevent him from being attacked by Hauley on June 14, 2005. The Indiana Department of Correction grievance policy allows grievance officials to accept late grievances if there is justification for the late submission. Retek's declaration establishes that she informed Peterson that unless he could "show just reason(s) for this delay, this grievance/appeal will not be reviewed," (DE #36-4

at p. 1). Retek states that Peterson did not respond to this directive and did not "attempt to correct the errors in his grievance." (DE #36-4 at p. 2).

The parties agree that the plaintiff has not exhausted his administrative remedies; they disagree on whether the blame for non-exhaustion rests with the plaintiff or with prison officials. Based on the parties' submissions, the court must determine whether the plaintiff simply failed to exhaust his administrative remedies, or whether the actions of prison officials prevented him from exhausting. If the court cannot make that determination based on the affidavits and documentary evidence now before it, the next step is for the court to conduct a hearing on exhaustion to determine whether "the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies) . . . or (c) the failure to exhaust was the prisoner's fault, in which event the case is over." *Pavey*, 544 F.3d at 742.

The court must accept Peterson's sworn statement that he attempted to file formal grievances dealing with the events of June 14-15, 2005, and his statement that he presented his claims arising out of those events to prison officials in his tort claim notice and letter to Internal Affairs as true for the purposes of this memorandum. But even if the court accepts that his efforts to file a formal grievance were unsuccessful because prison officials were uncooperative, the notice of tort claim and request for

investigation establish that he did not present to prison officials a claim that the defendants failed to protect him from an attack on him by Hauley on June 14, 2005.

The plaintiff says that he presented his claims arising from the events of June 14-15 2005 to prison officials in an eight page notice of tort claim. He has attached a copy of his notice of tort claim to his response to the defendants' summary judgment motion. (DE #32-2 at pp. 8-15). In this document, Peterson complains about many things, including that water to his cell was shut off, that his property was temporarily removed from his cell, that his clothing except for his underwear was taken from him, that an officer wrote an improper conduct report against him, and that he was placed in restrictive segregation units without due process. All of the claims presented in his notice of tort claim were claims he presented in his original and amended complaints but were dismissed by the court's screening order. (DE #17). The notice of tort claim, however, does not say anything about being attacked by his cellmate, nor does it assert that prison officials failed to protect him from being attacked by Hauley. Indeed, the notice of tort claim does not even mention Hauley's name.

The plaintiff also submits a copy of a request for investigation he asserts he submitted to MCF Internal Affairs on or about June 24, 2005. In this document, Peterson states:

> I would like to hereby request an investigation into an incident that took place on June 14th 2005, and prior to

> that resulted in my being charged with two conduct reports, a (B) and [C]. Wherefore, I was having problems with my old cellmate and could not get anyone to investigate and remedy the problem adequately. Further, that officers at this facility (staff) tried provoking my cellmate and [my]self into fighting one another, as well as an officer threatening me, and other officers trying to provoke other prisoners to attack me physically (A Battery). My hearing on the conduct reports are to be conducted on Wednesday 6/29/05. The conduct reports rose out of a continuous incident but [were] not dismissed. Also other prisoners having such problems with cellmates were moved immediately (and other incidents) that I have witnessed. Clearly it appears I was discriminated against, and suffered unreasonable conduct reports and conditions such as no water in my cell for over 16 hours before being turned on the next day. Etc. Etc.
> Therefore, I request an immediate investigation into this matter of racial discrimination and other violations that took place. Attorney General contacted [on] this matter, to which I expect that office to investigate.
>
> Thank You.

(DE #32-2 at p. 6).

Peterson wrote his request for investigation about two weeks after the incident of June 14, 2005. According to this document, the "incident that took place" on June 14, 2005, was not an attack by Hauley on Peterson or even a fight between the two of them. Rather, the incident of June 14, 2005 Peterson wanted Internal Affairs to investigate was "his being charged with conduct reports." In this letter, Peterson alleges racial discrimination, asserts that he was having problems with his cellmate and that officers "tried provoking my cellmate and [my]self into fighting one another," and alleges that he "suffered unreasonable conduct reports and conditions such as no water in my cell for over 16

hours before being turned on the next day.” (DE 32-2 at p. 6).

In this document, unlike his notice of tort claim, Peterson does state that he was having problems with his cellmate. He even states an opinion that officers tried to provoke a fight between Hauley and himself. He does not, however, assert that they actually fought, nor does he state that Hauley attacked him — which is necessary to present a failure to protect claim in an administrative grievance.

The plaintiff also attached the conduct report written against him on June 14, 2005, to his reply to the defendants’ response to his response to their summary judgment motion. (DE #37-2). This document confirms that Peterson was not accused of fighting with Hauley, it accuses him of flooding the range. Indeed, according to the conduct report Hauley wasn’t even in the cell:

> On 6-14-2005 at approx. 14:45 offenders between cells 315 through 319 began to complain of flooding their cells. After investigating cell 317-318 and turning all water off, I (Sgt, Duncan) had discovered that offender Peterson, Dennis DOC #7080 had placed an excessive amount of paper in his toilet in an attempt to flood his room. Offender Hauley, who is offender Peterson’s roommate, had been gone to sick call, and had been out of cell 317-318 at my discretion due to offender Peterson and Hauley not getting along. Offender Peterson later told ofc. J. Martin, he would continue to flood his cell until he is moved. A plunger was received and used to flush the toilet.

(DE #37-2).

If Hauley attacked Peterson on June 14, 2005, Peterson apparently did not consider it important enough to mention to

Officer Duncan, any more than he considered it significant enough to mention in his notice of tort claim or his letter to Internal Affairs — or, for that matter, in his original complaint. It is also clear that if there was an incident between Peterson and Hauley on June 14, 2005, Peterson did not suffer sufficient injury to request sick call for himself.

The court credits the plaintiff's statements that he attempted to grieve events that occurred on June 14 and 15, 2005, and that he presented his claims to prison officials in his notice of tort claim and in his request that internal affairs conduct an investigation. But the documents Peterson submits establish that he did not present an alleged attack on himself by his cellmate and the alleged failure of the defendants to protect him from that attack to prison officials in either his notice of tort claim or his request for an investigation. Peterson presented many other things to prison officials that he says happened to him on June 14 and 15, 2005, but he did not submit anything related to the single claim that remains before this court.

According to the record, the first time Peterson attempted to actually grieve an alleged attack on him by Hauley on June 14, 2005, was in his belated grievance which he filed June 1, 2008, almost three years after the event. The grievance administrator advised him that if he did not give valid reasons for the late filing that the grievance would not be reviewed. Peterson did not

provide such a justification, and the grievance was rejected. Exhaustion of administrative remedies is a condition precedent to suit in federal court, *Perez*, 182 F.3d at 335, so a grievance Peterson filed after he filed his complaint in this case would not constitute exhaustion even if grievance officials had accepted it.

## CONCLUSION

For the foregoing reasons, the court **GRANTS** Defendants' Motion for Summary Judgment (DE #30) and **DIRECTS** the clerk to enter judgment in favor of the defendants and against the plaintiff.

**DATED: February 27, 2009** **/S/RUDY LOZANO, Judge**
**United States District Court**